UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22870-CIV-GAYLES/D'ANGELO

M & M INTERIOR IMPROVEMENT, CORP.,
a Florida Profit Corporation, and
DAVID MARTINEZ, individually,

    Plaintiffs,

vs.

JPMORGAN CHASE BANK, N.A.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

**THIS CAUSE** is before the Court on Defendant JPMorgan Chase Bank, N.A.'s Motion to Compel Arbitration filed on August 12, 2024 (DE 9).[1] Plaintiffs M & M Interior Improvement, Corp. and David Martinez filed their response in opposition on September 9, 2024 (DE 19), and Defendant replied on September 16, 2024 (DE 20). In the Motion, Defendant requests that the Court stay this case and order the Parties to arbitrate Plaintiffs' claims relating to their Chase accounts and their use of Chase's online banking services. Having considered the Parties' arguments, the relevant legal authorities, and the pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons stated below, it is respectfully recommended that Defendant's Motion to Compel Arbitration be **GRANTED**, and the Court direct the Parties to bring their disputes before an arbitrator.

---

[1] This matter was referred to the undersigned Magistrate Judge for all pre-trial, non-dispositive matters and for a Report and Recommendation on all dispositive matters (DE 23).

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Plaintiff David Martinez owns Plaintiff-business M & M Interior Improvement, Corp. (DE 1-2 ¶ 2). Martinez and M & M Interior Improvement, Corp. collectively hold a total of three deposit accounts with Defendant JPMorgan Chase Bank, N.A. (*id.* ¶¶ 8, 9). On September 23, 2015, Martinez opened a Chase Total Business Checking Account ending in "7176" ("M & M Account") on behalf of M & M Interior Improvement, Corp. (DE 12 ¶¶ 4-5). At the time of account opening, Martinez agreed to the terms of the Chase Deposit Account Agreement ("DAA") and was provided a copy thereof, as evidenced by the Business Signature Card that Martinez signed (*id.* ¶¶ 4-7; DE 12, Ex. A). On August 8, 2019, Martinez opened a Chase CPC Savings Account ending in "8618" ("Martinez Savings Account") and similarly agreed to the terms of the DAA and was provided a copy thereof (DE 12 ¶¶ 8-11; DE 12, Ex. C). On March 21, 2013, Martinez and Aileen Martinez opened a Chase Premier Plus Checking Account ending in "4022" ("Martinez Checking Account") and again agreed to the terms of the DAA and were provided a copy thereof (DE 12 ¶¶ 13-15; DE 12, Ex. E). Since the time these three accounts were opened, Defendant periodically updated the DAA and notified Plaintiffs in writing of changes to the DAA (*id.* ¶ 17).

In addition, when a customer utilizes Defendant's online banking services, the customer must affirmatively acknowledge that he or she read and accepted the Consolidated Digital Services Agreement ("DSA") (*id.* ¶¶ 19, 21). On September 14, 2023, the individual using the Chase.com Profile ID for Martinez, which was affiliated with and had access to the M & M Account, the Martinez Savings Account, and the Martinez Checking Account, acknowledged that he read and accepted the terms of the DSA (*id.* ¶¶ 20, 21). There is no record with JPMorgan Chase Bank, N.A. of either Martinez or M & M Interior Improvement, Corp. requesting to opt-out of any provisions of the DAA or the DSA (DE 10 ¶ 3; DE 11 ¶ 3).

The DAA contained the following arbitration provisions:[2]

You and we agree that upon the election of either of us, any claims or disputes (as defined below) will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).

This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. . . . ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

**What claims or disputes are subject to arbitration?**

Claims or disputes between you and us about your deposit account, transactions involving your deposit account, and any related service or agreement with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the denial, approval or establishment of your account are also included. Claims or disputes are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. All such claims or disputes are referred to in this agreement as "Claims."

The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

**Can I (customer) cancel or opt out of this agreement to arbitrate?**

You have the right to opt out of this agreement to arbitrate if you tell us within sixty (60) days of opening your account. Requests to opt out of this agreement that are made more than sixty (60) days after opening your account are invalid. If you already have pending litigation or arbitration against/with us when you open an account, any request to opt out of this arbitration clause will not apply to that litigation or arbitration. If you want to opt out, call us at 1-800-935-9935. Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3)

---

[2] These provisions were contained in the DAA that was in effect in February 2024 (DE 12 ¶ 18).

you file for bankruptcy. Opting out of this agreement to arbitrate will not affect the other provisions of this agreement. If you validly opt out of this agreement to arbitrate, your decision to opt out will apply only to this arbitration agreement and not any other arbitration agreement.

. . .

**How does arbitration work?**

The party filing a Claim in arbitration must select JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its rules and procedures in effect at the time the arbitration is commenced. If there is a conflict between the applicable rules and procedures and this arbitration agreement and/or this agreement, this arbitration agreement and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure. The arbitrator will decide the Claim in accordance with all applicable law and consistent with the FAA. A single arbitrator will conduct the arbitration and will apply applicable substantive law, including the Uniform Commercial Code, statutes of limitation, conditions precedent to suit, and recognized principles of equity, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or relief as permitted by the law and the agreement between you and us (including the limitations set forth above).

**Is the arbitrator's decision final? Is there an appeal process?**

The arbitration ruling will be considered final and binding, and enforceable by any court having jurisdiction. No party may seek an appeal of the arbitration ruling except as provided under the FAA.

(DE 12, Ex. G at 25-26 (emphasis in original)).

The DSA contained the following arbitration provisions:

**14. Disputes and Arbitration**

You and we agree that, upon the election of either of us, any claims or disputes (as defined below) pertaining to the digital platforms, products, and services in this agreement will be resolved by binding arbitration as discussed below and not through litigation in any court (except for matters in small claims court). This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). Any dispute, claim or controversy about the underlying accounts, loans, credit cards, etc. will be resolved pursuant to the provisions of the

Other Documents (as defined in Section 1 above) pertaining to them. Any dispute, claim or controversy in connection with an Investment Account will be resolved pursuant to the provisions of the agreement governing your Investment Account and is not subject to the dispute provisions of this Section.

YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL, AND YOU AND WE ARE ALSO WAIVING ANY ABILITY TO ASSERT OR PARTICIPATE IN CLASS, REPRESENTATIVE, OR CONSOLIDATED PROCEEDING, WHETHER IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

**What claims or disputes are subject to arbitration?**

Claims or disputes between you and us about the digital platforms, products, and services in this agreement are subject to arbitration. Any Claims or disputes arising from or relating to this Agreement or any prior agreements of similar type between us are included. Claims or disputes are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims."

The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

**Can I (customer) cancel or opt out of this agreement to arbitrate?**

You have the right to opt out of this agreement to arbitrate if you tell us within sixty (60) days of accepting this Agreement. Requests to opt out of this Agreement that are made more than sixty (60) days after the initial acceptance of this Agreement are invalid. If you already have pending litigation or arbitration against/with us when you accept this Agreement, any request to opt out of this arbitration clause will not apply to that litigation or arbitration. If you want to opt out, go to the Legal Agreements and Disclosures section of your chase.com or jpmorganonline. com profile or on Chase Mobile or JP Morgan Mobile. Otherwise this agreement to arbitrate will apply without limitation.  Opting out of this agreement to arbitrate will not affect the other provisions of this Agreement. If you validly opt out of this agreement to arbitrate, your decision to opt out will apply only to this arbitration agreement and not any other arbitration agreement.

. . .

**How does arbitration work?**

The party filing a Claim in arbitration must select JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its rules and procedures in effect at the time the arbitration is commenced. If there is a conflict between the applicable rules and procedures and this arbitration agreement and/or this Agreement, this arbitration provision and this Agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The arbitrator will decide the Claim in accordance with all applicable law and consistent with the FAA. A single arbitrator will conduct the arbitration and will apply applicable substantive law, including the Uniform Commercial Code, statutes of limitation, conditions precedent to suit, and recognized principles of equity, will honor claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or relief as permitted by the law and the agreement between you and us (including the limitations set forth above).

**Is the arbitrator's decision final? Is there an appeal process?**

The arbitration ruling will be considered final and binding, and enforceable by any court having jurisdiction. No party may seek an appeal of the arbitration ruling, except as provided under the FAA.

(DE 12, Ex. H at 16-17 (emphasis in original)).

Plaintiffs allege that in February 2024, over the course of 16 transactions, $445,605.00 was fraudulently transferred from the M & M Account, the Martinez Savings Account, and the Martinez Checking Account, leaving only $5,000.00 in the M & M Account after the transactions were completed (DE 1-2 ¶¶ 8-13, 19). The 16 transactions "display[ed] obvious indicia of fraudulent activity" (*id*. ¶ 19). For example, the money was transferred in whole numbers, or round numbers, and transferred to different individuals and entities at banks in various states (*id*.). Despite assigning a claim number to the incident, Defendant "failed to offer any compensation" to Plaintiffs (*id*. ¶ 20).

Plaintiffs filed suit on June 20, 2024, in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida in Case No. 2024-011432-CA-01 (DE 1 at 1-2). Plaintiffs brought two claims in their Complaint – one for negligence and one for breach of fiduciary duty (DE 1-2 ¶¶ 22-34). On June 28, 2024, Plaintiffs perfected service of process on Defendant, who timely removed the case to federal court (DE 1 at 2). After removal, Defendant filed the instant Motion, requesting that the Court order the Parties to bring their disputes to arbitration based on the terms of the DAA and the DSA (DE 9).

II.  **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") governs the arbitration provisions contained in the DAA and the DSA, "as it is a transaction of money, goods, and services between citizens of different states." *Alttrix, LLC v. MobileWare, Inc.*, No. 17-CIV-61588, 2017 WL 11614936, at *5 (S.D. Fla. Dec. 13, 2017). Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (2022). Further, a party "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id*. § 4. If a case is referred to arbitration, a court "shall. . . stay the trial of the action until such arbitration has been had." *Id*. § 3. "The FAA embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs*., 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983)). "The role of the courts is to 'rigorously enforce agreements to arbitrate[;]'" therefore, the presence of a valid arbitration agreement raises a strong presumption of enforcement. *Id.* at 1366 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 630-31 (1985).

However, "[u]nder federal law, arbitration is a matter of consent, not coercion." *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1256 (S.D. Fla. 2021) (quotation and citation omitted). "Although the FAA governs the applicability of arbitration agreements, state law governs issues 'concerning the validity, revocability, and enforceability of contracts generally.'" *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability" are determined by the applicable state law. *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007) (citation omitted). In this case, Defendant did not dispute Plaintiffs' assertion that the DSA is subject to New York law and that the DAA is subject to Florida law. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[F]ailure to make arguments and cite authorities in support of an issue waives it.").

### III.  DISCUSSION

Defendant argues that when Plaintiffs agreed to use Defendant's banking services, Plaintiffs also agreed to the terms of the DAA and the DSA, which contain valid arbitration provisions (DE 9 at 2-4, 6). As an initial matter, Defendant asserts that the binding arbitration clause contemplates that the arbitrator will decide issues of arbitrability (*id.* at 9-11). Even if the Court decides whether this dispute is arbitrable, Defendant contends that the DAA and the DSA contain valid arbitration provisions that require arbitration (*id.* at 11-16). According to Defendant, the arbitration provisions are valid, because Plaintiffs had notice of the agreements and assented to them (*id.* at 11). Further, the arbitration provisions cover any claims or disputes related to the transactions at issue, and Defendant has not waived its right to arbitrate (*id.* at 11-16). Therefore, Plaintiffs' claims are subject to the arbitration provisions of the DAA and the DSA.

In their response, Plaintiffs contend that the arbitration provisions in the DAA and the DSA are not valid, because they do not provide consumers with a reasonable opt-out option (DE 19 at 3-8). Plaintiffs argue that Defendant's opt-out provisions in the DAA and the DSA are the "functional equivalent of telling the unsophisticated consumer to 'figure it out,'" without providing consumers with clear instructions as to how they can opt-out of the arbitration provisions (*id*. at 5). Plaintiffs do not dispute that if the arbitration provisions are enforceable, their claims fall within the scope of the arbitration clauses in the DAA and the DSA or that Defendant has timely acted to enforce its right to arbitration.

### A. Arbitrability Should be Determined by the Arbitrator

"[T]he question of arbitrability . . . is undeniably an issue for judicial determination[ ] [u]nless the parties clearly and unmistakably provide otherwise . . . ." *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (citation and quotation omitted). Indeed, "[t]he parties to a contract may agree to have an arbitrator, rather than a court, decide issues of arbitrability, including whether an arbitration agreement is valid and/or enforceable." *Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London*, 359 F. Supp. 3d 1253, 1264 (S.D. Fla. 2019). Agreements to arbitrate arbitrability, commonly referred to as delegation clauses, "will be upheld if it represents the parties' 'clear and unmistakable' intent to allow issues of arbitrability to be decided by an arbitrator." *Id*. Where a party challenges the arbitration agreement as a whole but does not directly challenge the delegation clause, the United States Court of Appeals for the Eleventh Circuit has held, "we must treat the delegation provision as valid and allow the arbitrator to determine the issue of arbitrability." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015).

Defendant properly raised that both the DAA and the DSA contain provisions stating the rules of JAMS and the American Arbitration Association ("AAA") apply, and the matter shall be arbitrated pursuant to the AAA rules of procedure (DE 12, Ex. G at 25-26; DE 12, Ex. H at 16-17). JAMS Rule 11(b) states, "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." *JAMS Comprehensive Arb. Rules & Proc.*, https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11.  Similarly, AAA Rule 7 states that the arbitrator has the power to determine jurisdiction and the existence, scope, or validity of the arbitration agreement.  *AAA Com. Arb. Rules & Mediation Proc.*, https://www.adr.org/sites/default/files/Commercial_Rules_Web.pdf.

Where, as here, the Parties "incorporate the rules of the [American Arbitration] Association into their contract, they 'clearly and unmistakably agree[ ] that the arbitrator should decide whether the arbitration clause [applies].'" *U.S. Nutraceuticals*, 769 F.3d at 1311 (citation omitted); *WasteCare Corp. v. Harmony Enterprises, Inc.*, 822 F. App'x 892, 895-96 (11th Cir. 2020) ("We have held that where the parties expressly incorporate the AAA rules into an arbitration provision, 'this alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator.'" (citing *JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018)); *SBMH Grp. DMCC v. Noadiam USA, LLC*, 297 F. Supp. 3d 1321, 1324 (S.D. Fla. 2017) ("When parties to an arbitration agreement have incorporated rules empowering arbitrators to decide questions of arbitrability, courts will find clear and unmistakable evidence of the parties' intent to have threshold arbitrability questions resolved by the arbitrator."); *see also Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 459 (N.D. Ill. 2021) (finding the DAA clearly and unmistakably delegates arbitrability to the arbitrator).

The Eleventh Circuit's guidance is clear that "when the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *WasteCare Cop.*, 822 F. App'x at 895. Nor do Plaintiffs offer any argument to the contrary. Even though Plaintiffs challenge whether the arbitration provisions are enforceable, the DAA and the DSA require that the very issue of whether the arbitration clauses are valid must be brought to the arbitrator. "[A] challenge to the validity of the Arbitration Clause as a whole . . . does not defeat the delegation clause[, where] . . . the Arbitration Clause unambiguously commits to the arbitrator the power to determine issues of arbitrability, including validity and enforceability." *Ytech 180 Units*, 359 F. Supp. 3d at 1266.

### B. Enforceability of the Arbitration Clauses

Even if the Court were empowered to decide the validity of the arbitration provisions in the DAA and the DSA, which it is not, those provisions should be enforced based on the Parties' agreement. Plaintiffs argue that the DAA and the DSA do not contain valid opt-out provisions of the arbitration clauses, because the opt-out procedures were not clearly stated, such that a customer could meaningfully exercise his or her ability to opt-out. Yet, many courts have reviewed the arbitration provisions in the DAA and the DSA and found them to be enforceable. *See Sanchez v. J.P. Morgan Chase Bank*, N.A., No. 14-CIV-20468, 2014 WL 4063046, at *2-3 (S.D. Fla. Aug. 15, 2014) (compelling arbitration based on the terms of the DAA); *VR Consultants, Inc. v. J.P. Morgan Chase & Co.*, No. 20-CIV-6110, 2021 WL 5494373, at *3 (D.N.J. Nov. 23, 2021) (compelling arbitration based on the DAA and the Online Agreement); *Sha-Poppin Gourmet Popcorn LLC*, 553 F. Supp. 3d at 459 (compelling arbitration under the DAA); *Sunmonu v. Chase Bank, N.A.*, No. CV GLR-18-1695, 2019 WL 1258788, at *4 (D. Md. Mar. 19, 2019) (same).

Plaintiffs' arguments that the arbitration clauses are unconscionable under Florida or New York law are equally unconvincing. Defendant's arbitration provisions do not subject Plaintiffs to harsh or unfair terms. *See Bank v. WorldCom, Inc.*, No. 122484/00, 2002 WL 171629, at *2 (N.Y. Sup. Ct. Jan. 24, 2002) (explaining that the purpose of the unconscionability doctrine is to "ensure that the more powerful party cannot surprise the other party with some overly oppressive term" (quotation and citation omitted)); *see also Emps. Ins. of Wausau v. Able Green, Inc.*, 749 F. Supp. 1100, 1104 (S.D. Fla. 1990) ("The purpose behind the unconscionability doctrine is 'prevention of oppression and unfair surprise.'" (quotation omitted)). Rather, the DAA and the DSA give customers a choice to opt-out of the arbitration clauses without any adverse effect on their banking services. *See Panchal v. T-Mobile USA, Inc.*, No. 24-CIV-456, 2024 WL 2293180, at *2 (M.D. Fla. May 21, 2024) (finding no "take-it-or-leave-it" bargaining scenario, and in turn no procedural unconscionability, where Plaintiffs could simply opt-out of arbitration at no cost).

The opt-out language was also sufficiently specific to allow a customer to actually opt-out of the arbitration provisions. Defendant provided customers, and Plaintiffs, with directions about how to opt-out of arbitration in the DAA and the DSA, including by calling customer service at the number provided, visiting a banker, or visiting the legal disclosures page of their Chase online account. *See Milfort v. Comcast Cable Commc'ns Mgmt. LLC*, 309 F. Supp. 3d 1268, 1272 (S.D. Fla. 2018) (finding opt-out language that directs customers to a webpage or to submit an opt-out request by mail "clear and unambiguous"). Notably, Plaintiffs have not argued that they tried to opt-out and were unable to do so. Plaintiffs instead argue that if they hypothetically attempted to opt-out, Defendant's directions were not specific enough. But, this argument is wholly insufficient to render the arbitration provisions in the DAA and the DSA unenforceable, particularly where Plaintiffs were given the opportunity to opt-out and chose not to do so.

12

In sum, whether the DAA and the DSA contain valid and enforceable arbitration clauses, requiring Plaintiffs to arbitrate their disputes, must be decided by the arbitrator.  Plaintiffs have offered no arguments that call into question the clear and unmistakable intent to delegate this authority to the arbitrator.  And even if the arbitrator were not empowered to decide issues of arbitrability, which the arbitrator is, Plaintiffs have not shown that the arbitration provisions in the DAA and the DSA are unenforceable.  Based on the clear language in the DAA's and the DSA's arbitration clauses, to which Plaintiffs agreed, Plaintiffs must bring their disputes with Defendant to arbitration.

## IV.  CONCLUSION

Based on the foregoing, it is respectfully recommended that the Motion to Compel Arbitration (DE 9) be **GRANTED**, and the Court direct the Parties to proceed to arbitration.  It is further respectfully recommended that this matter be **STAYED** pending arbitration.

## V.  OBJECTIONS

The Parties will have fourteen (14) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain

error, if necessary, in the interest of justice.  *See* 28 U.S.C. § 636(b)(1)*; Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 24th day of January, 2025.

_____
ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record